Craig H. Durham
Idaho State Bar No. 6428
Ferguson Durham, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208)-345-5183
F: (208)-906-8663
chd@fergusondurham.com

Jeffrey Brownson
Idaho State Bar No. 7474
Law Office of Jeffrey Brownson
223 North 6th Street, Suite 215
Boise, Idaho 83702
T: (208)-342-5800
F: (208)-437-8041
jb@jeffreybrownsonlaw.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| RACHEL CONNELL and RICHARD CONNELL,<br><br>          Plaintiffs,<br><br>    v.<br><br>ANDREW McCLURE, in his individual capacity; KEVIN ELLIS, in his individual capacity; and LINCOLN COUNTY, IDAHO, a governmental entity acting through its Board of Commissioners,<br><br>          Defendants. | Case No.<br><br>**CIVIL COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTORY STATEMENT

1.     Plaintiffs seek damages for former Lincoln County Sheriff's Deputy Andrew McClure's excessive use of force on 67-year-old Rachel Connell and her adult son Richard ("Rick") Connell during a welfare check at Rachel Connell's home. Rachel peacefully and calmly asked to assist her other son, Tad Connell, who had shot himself in the arm, when McClure unexpectedly and angrily shoved Rachel out of a door and down concrete steps, where she seriously injured her back, shoulder, arms, neck, and hands. Moments later, McClure tased Rick Connell multiple times and beat him in the back of his head with a conducted electrical weapon ("CEW") while Rick was lying face down on the ground. Both Rachel and Rick suffered significant and lasting physical and mental injuries. They bring federal civil rights claims against Deputy McClure, former Sheriff Kevin Ellis, and Lincoln County, and a supplemental state law claim against Lincoln County.

## JURISDICTION

2.     The Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343.  The federal action is authorized by 42 U.S.C. § 1983.

3.     The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) because it is so related to the federal claims within the Court's original jurisdiction it forms a part of the same case or controversy.

## VENUE

4.     The Defendants reside in the District of Idaho, and Plaintiff's claims for relief arose in this District.  Accordingly, venue in the District of Idaho is proper under 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff Rachel Connell is a resident of the state of Idaho. She lives in Lincoln County, Idaho.

6.     Plaintiff Richard ("Rick") Connell is a resident of the state of Idaho. He lives in Lincoln County, Idaho.

7.     Defendant Andrew McClure was at all relevant times acting under color of state law through his employment as a deputy for the Lincoln County, Idaho, Sheriff's Department. On information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

8.     Defendant Kevin Ellis was at all relevant times acting under color of state law through his employment as the Sheriff of Lincoln County, Idaho. On information and belief, he is a resident of the state of Idaho. He is sued in his individual capacity for civil rights violations under 42 U.S.C. § 1983.

9.     Defendant Lincoln County is a political subdivision of the state of Idaho that was at all relevant times the governmental entity that employed Ellis, McClure, and Lincoln County negligently hired, trained, and/or supervised its law enforcement

CIVIL COMPLAINT - 3

officers. Moreover, it had a policy, practice, or custom that was the moving force behind the constitutional violations in this case.

## FACTS RELEVANT TO ALL CLAIMS

10.     About 10:00 p.m. on September 23, 2016, Rick Connell received a call from Rachel informing him that his brother, Tad, had accidently shot himself in the shoulder. Tad lived in a trailer on the Connell property outside of Shoshone, Idaho.

11.     Rick called a family friend, Craig Hadden, who lived nearby Rachel's home that she shares with her partner of 12 years, Mark Hopper.

12.     Hadden hurried over to Rachel and Mark's home, where he found Tad on the couch holding a towel to his arm. Tad told Hadden that he had shot himself accidently.  Rick and Rick's wife, Terri, also arrived at the home.

13.     Though everyone was concerned about Tad's welfare, there was no continuing risk of self-harm or violence, and Hadden called 911 because he thought Tad may need medical treatment. He told the 911 operator that Tad had shot himself. The operator wanted to know the type and caliber of the gun, so Hadden asked Tad, who told him it was a .22 caliber handgun and that it was in the trailer.

14.     Hadden went to the trailer and found the gun. The action was open, and it was empty.

15.     Still on the phone with the 911 operator, Hadden told the operator the gun was in the trailer and that it was a .22 caliber. Hadden also gave 911 operator the

CIVIL COMPLAINT - 4

address to the Connell home. Leaving the gun where it was found, Hadden then locked the trailer and went back inside the home.

16.     Meanwhile, Lincoln County Sheriff's Deputy Andy McClure was at another call when he and Shoshone city police officer Canterbury were dispatched to conduct a welfare check at the Connell home. They left their previous call and drove their patrol vehicles to the Connell residence. On the way, dispatch informed them that the gunshot was self-inflicted and that there was nobody else in the trailer.

17.     McClure and Canterbury arrived shortly thereafter, where they were greeted by Rachel, Rick, Craig Hadden, and Terri. The group informed the officers of the situation. The officers immediately entered the home, where they found Tad on the couch.

18.     McClure and Canterbury ordered everyone out of the house while they assessed Tad's injuries.

19.     Over the next several minutes, it became apparent that Tad did not want help from the officers. He was passively resistant, though not openly threatening, to Deputy McClure's demand that he be allowed to see where Tad shot himself. Tad repeatedly expressed that he did not want help. He said he did not want to go to the hospital. McClure told him he had to go.

20.     McClure and Canterbury became more forceful.  McClure took out a duty knife and began to cut off Tad's shirt. Tad again passively resisted.

CIVIL COMPLAINT - 5

21.     McClure's anger growing, McClure handcuffed Tad and threw Tad on the floor forcing him to comply.

22.     At this point, Rachel Connell appeared through a back door and took a step toward McClure, telling him she could help with her son. She had her hands out and was not holding anything. Rachel is a small and frail 67-year-old woman, which would have been readily apparent to any reasonable observer.

23.     McClure, a large man well over 200 pounds, took a few quick strides toward her, and shoved her backwards and out the door. McClure slammed the door shut and went back to dealing with Tad.

24.     Rachel hit her head on the doorjamb, fell backward and down concrete steps. She seriously injured her neck, back, and arms. She began shaking vigorously.

25.     A few moments later, Office Canterbury went out the back door, where Rachel stood a few feet away, crying, shaking and surrounded by Rick, Craig Hadden, and Terri. Canterbury was checking on Rachel's welfare.  The group was upset at Rachel's treatment and loudly complaining to Canterbury.

26.     Deputy McClure then appeared at the back door.  He ordered the group off their own property. Rick yelled back that it was their property and that McClure himself should leave.

27.     McClure started to stride toward Rick, shoving others out of the way. Rick turned and began to hurry away. McClure took out his taser and tased Rick in the back

by his shoulder blade. He then grabbed Rick and threw him to the ground, tasing him multiple times. McClure then jumped on top of Rick and started beating him in the head with his taser, opening a wound.

28.     Meanwhile, medical personnel were treating Tad, who was not seriously injured by the superficial gunshot wound.

29.     Officer Canterbury came over to where McClure had beaten and subdued Rick, telling McClure they needed to calm things down.

30.     McClure next confronted bystander Craig Hadden. Hadden told McClure that he was out of control. McClure responded by grabbing him, turning him around, and handcuffing him. McClure then put Hadden in his patrol car.

31.     Although Rick was initially detained, McClure took him to an ambulance where he then removed the handcuffs. McClure then released Hadden from his patrol car. McClure did not arrest Rick, instead telling him and others that he knew he would probably be sued. He subsequently handed out his business card.

32.     Rick was taken to the hospital where he received numerous stitches as a result of the taser being bashed into the back of his head.

33.     Deputy McClure failed to record this incident on his body camera, or if he did record it, he failed to retain it. But body camera video from Office Canterbury exists and has been disclosed to Plaintiffs.

34.     Deputy McClure also failed to write any reports of this incident, despite

using intermediate if not deadly force, in violation of Lincoln County Sheriff's Office policies and procedure.

35.     Deputy McClure's battery on Rachel caused her serious physical injuries and persistent mental anguish. She has since had repeated and ongoing medical treatments, including surgery, for these injuries.

36.     Deputy McClure's beating of Rick Connell also caused him lasting physical injuries and mental anguish.

37.     As a result of this incident, Mark Hopper, Rachel's partner, was required to take off approximately two months of work to care for Rachel, causing significant financial and emotional distress within the family.

38.     On information and belief, Deputy McClure has a history of excessive force and of violating standard policies and procedures. Despite that, Lincoln County hired, failed to train him adequately, and retained him.

39.     On information and belief, not long after this incident Deputy McClure's employment ended with Lincoln County.

40.     Rachel Connell and Rick Connell (and Mark Hopper and Terri Connell) filed notices of tort claims with Lincoln County on March 20, 2017, within 180 days of the incident. Lincoln County did not respond.

## CLAIMS FOR RELIEF

### I.

**Rachel Connell against Deputy Andrew McClure**

**Violation of the Right to be Free From Unreasonable Seizures
under the Fourth and Fourteenth Amendments**

**42 U.S.C. § 1983: Excessive force**

41.     Plaintiffs incorporate paragraphs 1 through 40.

42.     At all relevant times, Defendant Andrew McClure was acting under color
of state law.

43.     On September 23, 2016, Defendant McClure seized Rachel Connell.

44.     In seizing Rachel Connell, Defendant McClure acted intentionally.

45.     Deputy McClure lacked reasonable suspicion or probable cause to seize
Rachel Connell.

46.     Defendant McClure's seizure and use of force against Rachel Connell was
objectively unreasonable.

47.     Defendant McClure's seizure and unreasonable use of force damaged
Rachel Connell in an amount to be ascertained at trial.

## II.

### Richard ("Rick") Connell against Deputy Andrew McClure

### Violation of the Right to be Free From Unreasonable Seizures under the Fourth and Fourteenth Amendments

### 42 U.S.C. § 1983: Excessive Force

48.     Plaintiffs incorporate paragraphs 1 through 47.

49.     At all relevant times, Defendant Andrew McClure was acting under color of state law.

50.     On September 23, 2016, Defendant McClure seized Rick Connell.

51.     Deputy McClure lacked reasonable suspicion or probable cause to seize Rick Connell.

52.     In seizing Rick Connell, Defendant McClure acted intentionally.

53.     Defendant McClure's seizure and use of force against Rick Connell was objectively unreasonable.

54.     Defendant McClure's unreasonable seizure and use of force damaged Rick Connell in an amount to be ascertained at trial.

### III.

### Rachel Connell against Sheriff Kevin Ellis

### Violation of the Right to be Free From Unreasonable Seizures under the Fourth and Fourteenth Amendments

### 42 U.S.C. § 1983

55.     Plaintiffs incorporate paragraphs 1 through 54.

56.     At all relevant times, Defendant Kevin Ellis was acting under color of state law.

57.     Defendant Ellis was in a supervisory position to Defendant McClure.

58.     The acts of Defendant McClure against Rachel Connell violated her rights under the Fourth and Fourteenth Amendments.

59.     Defendant Ellis failed to properly train, supervise, or control Defendant McClure.

60.     Defendant Ellis disregarded the known or obvious consequence that Defendant McClure's lack of training and supervision would cause Defendant McClure to violate Plaintiff's constitutional rights.

61.     Alternatively, Defendant Ellis engaged in conduct that showed a reckless or callous indifference to the deprivation of the rights of others by Defendant McClure.

62.     Defendant Ellis's acts or omissions damaged Rachel Connell in an amount to be ascertained at trial.

## IV.

### Richard ("Rick") Connell against Sheriff Kevin Ellis

### Violation of the Right to be Free From Unreasonable Seizures under the Fourth and Fourteenth Amendments

### 42 U.S.C. § 1983

63.     Plaintiffs incorporate paragraphs 1 through 62.

64.     At all relevant times, Defendant Kevin Ellis was acting under color of state law.

65.     Defendant Ellis was in a supervisory position to Defendant McClure.

66.     The acts of Defendant McClure against Rick Connell violated his rights under the Fourth and Fourteenth Amendments.

67.     Defendant Ellis failed to properly train, supervise, or control Defendant McClure.

68.     Defendant Ellis disregarded the known or obvious consequence that Defendant McClure's lack of training or supervision would cause Defendant McClure to violate Plaintiff's constitutional rights.

69.     Alternatively, Defendant Ellis engaged in conduct that showed a reckless or callous indifference to the deprivation of the rights of others by Defendant McClure.

70.     Defendant Ellis's acts or omissions damaged Rick Connell in an amount to be ascertained at trial.

## V.

## Rachel Connell and Richard (Rick) Connell against Lincoln County

## 42 U.S.C. § 1983:  *Monell* Claim

## Failure to Train or Supervise Law Enforcement Officers

71.     Plaintiffs incorporate paragraphs 1 through 70.

72.     Lincoln County is the public entity that governs the Lincoln County

Sheriff's Department.

73.     Deputy Sheriff Andrew McClure was acting under color of state law.

74.     Deputy Sheriff Andrew McClure's unreasonable seizure and use of force

violated Rachel Connell's constitutional rights.

75.     Deputy Sheriff Andrew McClure's unreasonable seizure and use of force

violated Rick Connell's constitutional rights.

76.     Lincoln County's policies, practices, or customs were not adequate to train

or supervise its Sheriff's deputies to handle the usual and recurring situations with

which they must deal.

77.     Lincoln County was deliberately indifferent to the known or obvious

consequences of its failure to train or supervise its deputies adequately.

78.     Lincoln County's failure to train or supervise its deputies was the moving

force behind the constitutional violations to Rachel Connell, Richard Connell, and Mark

Hopper, which injured and damaged each of them in an amount to be ascertained at

trial.

## VI.

**Rachel Connell and Richard (Rick) Connell against Lincoln County**

**Negligent Hiring, Supervision, or Training**

**Idaho Tort Claims Act, Idaho Code §§ 6-901 through 6-929**

79.     Plaintiffs incorporate paragraphs 1 through 78.

80.     Idaho has waived its sovereign immunity for state law claims seeking money damages from governmental entities or their employees, acting within the course and scope of their employment, for negligent or other wrongful acts.  Idaho Code § 6-903(a).

81.     Lincoln County has a duty to the public, including Plaintiffs, to exercise ordinary care in the hiring, training, and supervision of its law enforcement officers.

82.     Lincoln County breached its duty to exercise ordinary care in the hiring, training, and supervision of Sheriff Kevin Ellis and Deputy Sheriff Andrew McClure.

83.     Lincoln County's breach of its duty to exercise ordinary care to hire, train, and supervise its law enforcement officers was the "but for" and proximate cause of Plaintiffs' injuries, which include pecuniary and non-pecuniary damages and attorney fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment:

1.      Finding and declaring that Plaintiffs' protected federal and state rights were violated as set forth in this Complaint;

2.      Awarding Plaintiffs monetary damages, in an amount to be determined at trial, that will fully and fairly compensate the Plaintiffs for their injuries and losses, pain and suffering, and emotional distress and anguish;

3.      Awarding Plaintiffs punitive damages, in an amount sufficient to punish Defendants for their evil motive or intent, or for their reckless and callous indifference for the constitutional rights of others, and to deter others from like conduct;

4.      Awarding Plaintiffs their reasonable attorney fees and costs against Defendants under 42 U.S.C. § 1988, Idaho Code §§ 12-120, 12-121, and any other applicable statutes or rules;

5.      Setting a jury trial on all questions of fact or combined questions of law and fact raised by this Complaint.

6.      Any other relief that the Court deems appropriate.

//

//

SUBMITTED ON THIS 9th day of February 2018.


/s/ Craig H. Durham

/s/ Jeffrey Brownson

Attorneys for Plaintiffs